REED DRUG COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101325. Promulgated May 22, 1941.

*L. F. Loux, Esq.,* for the petitioner.
*T. F. Callahan, Esq.,* for the respondent.

574

[illustration blacked out]

OPINION.

HARRON: The sole question is whether in the computation of the surtax imposed by section 14 of the Revenue Act of 1936 petitioner is entitled under section 27 (f) to a dividends paid credit of $54,130.38, the amount of its earned surplus at the time of the transfer of all its assets to the new corporation. Under section 14 undistributed net income, on which the surtax is based, is computed by subtracting from adjusted net income the "dividends paid credit provided in section 27." The provisions of section 27, in so far as pertinent to the present question, are set forth in the margin.[1] In the compu-

---

[1] SEC. 27. CORPORATION CREDIT FOR DIVIDENDS PAID.

(a) DIVIDENDS PAID CREDIT IN GENERAL.—For the purposes of this title, the dividends paid credit shall be the amount of dividends paid during the taxable year.

*       *       *       *       *       *       *

(f) DISTRIBUTIONS IN LIQUIDATION.—In the case of amounts distributed in liquidation the part of such distribution which is properly chargeable to the earnings or profits accumulated after February 28, 1913, shall, for the purposes of computing the dividends paid credit under this section be treated as a taxable dividend paid.

*       *       *       *       *       *       *

(h) NONTAXABLE DISTRIBUTIONS.—If any part of a distribution (including stock dividends and stock rights) is not a taxable dividend in the hands of such of the shareholders as are subject to taxation under this title for the period in which the distribution is made, no dividends paid credit shall be allowed with respect to such part.

tation of the surtax imposed by section 14 on its corporation income and excess profits tax return for the taxable year petitioner took a dividends paid credit of $54,130.38, under the assumption that the distribution of the stock of the new corporation in exchange for its own stock, and in liquidation, was a distribution which was properly chargeable to accumulated earnings within subsection (f) of section 27. In the statement attached to the deficiency notice respondent disallowed the full amount of the dividends paid credit taken by petitioner.

Respondent contends that petitioner is not entitled to any dividends paid credit under subsection (f). He argues that no gain to petitioner's stockholders from the receipt of the shares of stock of the new corporation was recognized by law; that thus under section 115 (h) of the Revenue Act of 1936 the distribution by petitioner of such stock did not constitute "a distribution of earnings or profits of any corporation"; and that thus no part of such stock distributed by petitioner was "properly chargeable to the earnings or profits accumulated after February 28, 1913" within the meaning of subsection (f). The provisions of section 115 (h), in so far as pertinent to the present question, are set forth in the margin.[2]

Respondent also makes the somewhat related argument that on the exchange by petitioner of all its assets for the shares of stock of the new corporation the earned surplus of petitioner was not convertible into capital of the new corporation, but still remained earned surplus in the hands of the new corporation, and that thus no part of the stock of the new corporation subsequently distributed by petitioner to its stockholders in complete liquidation was properly chargeable to earnings or profits. In support of this argument he cites *Commissioner* v. *Sansome*, 60 Fed. (2d) 931; certiorari denied, 287 U. S. 667; *United States* v. *Kauffman*, 62 Fed. (2d) 1045; *Murchison* v. *Commissioner*, 76 Fed. (2d) 641.

In our opinion respondent's determination is correct.

Under section 27 (f) not all distributions in liquidation are to be treated as a taxable dividend paid for the purposes of computing the dividends paid credit. Only amounts distributed or the part of such distribution which is "properly chargeable to the earnings or profits accumulated after February 28, 1913", shall be treated as a taxable dividend paid. Petitioner has not presented any argu-

---

[2] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

\*   \*   \*   \*   \*   \*   \*

(h) EFFECT ON EARNINGS AND PROFITS OF DISTRIBUTIONS OF STOCK.—The distribution (whether before January 1, 1936, or on or after such date) to a distributee by or on behalf of a corporation of its stock or securities or stock or securities in another corporation shall not be considered a distribution of earnings or profits of any corporation—

(1) if no gain to such distributee from the receipt of such stock or securities was recognized by law, \* \* \*

ment whatever to support a contention that the distribution of the stock of the new corporation was such distribution as is specified in section 27 (f) to be the kind of distribution which shall be treated as a taxable dividend paid. Petitioner makes a "philosophic" argument, for want of a better term, that it ought to be entitled to a dividends paid credit because it distributed all that it retained in a complete liquidation; namely, stock of a new corporation received in an exchange of property for stock pursuant to a plan of reorganization. Petitioner makes a wholly untenable argument that the holding in *Credit Alliance Corporation*, 42 B. T. A. 1020, supports a determination in its favor in this case, completely ignoring the great difference in facts in that case where the distributing corporation distributed its cash and property in a complete liquidation, and no distribution of stock of another corporation, a party to a reorganization, was involved. In reality petitioner has made no analysis whatsoever of its case and it comes to this Board with no more than a plea that the respondent's determination be set aside. The foregoing is pointed out to make it clear that petitioner has presented little or no authority for its general contention. It is hardly necessary to point out that the *Credit Alliance Corporation* case is distinguishable on the facts and that the holding there made is in no way controlling here.

Furthermore, petitioner has stipulated that all of the parties concerned in the exchanges made pursuant to a plan of reorganization treated the exchanges as not involving gain or loss. Petitioner did not report gain or loss from the exchange of its assets for stock of the new corporation and petitioner's stockholders did not report gain or loss from receipt of stock of the new corporation in exchange for petitioner's stock.

The first step taken by petitioner pursuant to a plan of reorganization was to exchange all of its assets solely for the stock of the new corporation. Under section 112 (b) (4) no gain or loss was recognized by law. The second step, taken a few months later, was the exchange of the stock of the new corporation for petitioner's own stock, in pursuance of the plan of reorganization. No gain or loss was recognizable at law upon this exchange under section 112 (b) (3). Section 115 (h) deals specifically with the kind of distribution with which we are concerned here. It refers to a distribution by one corporation of stock in another corporation and it provides that such distribution "shall not be considered a distribution of earnings or profits of *any* corporation—(1) if no gain to such distributee from the receipt of such stock * * * was recognized by law, * * *." (Italics supplied.) Clearly, the distribution by petitioner of the stock of the new corporation to its stockholders falls squarely within

the terms of section 115 (h). It follows that no part of the distribution in question is "properly chargeable to the earnings and profits accumulated after February 28, 1913," and no part of the distribution can be treated as a taxable dividend paid under section 27 (f). In short, in our opinion, section 27 (f) is not applicable to the distribution *of stock* involved in this case.

It is hardly a possibility that section 27 (f) was drafted without cognizance of the provisions of section 115 (h), which is entitled "EFFECT ON EARNINGS AND PROFITS OF DISTRIBUTIONS OF STOCK." It is clear from the report of the Senate Committee on Finance to accompany the Revenue Bill of 1936[3] that section 115 (h) of the 1936 Act was drafted to make clear the rule at law of the effect on earnings and profits of a distribution of stock in connection with a reorganization on which distribution gain is not recognized. The Committee stated in its report that "earnings· or profits are not diminished by such distribution (of stock)." Furthermore, if the petitioner's contention could be sustained, such result would do violence to the real purpose of section 27, because a corporation could obtain a dividends paid credit each year by the device of a reorganization and a distribution of *stock* of the new corporation to its stockholders without reducing its accumulated earnings and profits.

To apply the express provisions of section 115 (h) in determining whether or not the distribution (in liquidation of the old corporation) of stock of the new corporation in exchange for stock of the old corporation can be treated as a taxable dividend paid, does not in our opinion result in any modification of section 27 (f). Rather, section 115 (h) aids in the application of section 27 (f), for it limits the dividends paid credit to a distribution which is properly chargeable to accumulated earnings and profits, and section 115 (h) states what kind of distribution can not be said to be a distribution of earnings and profits. But, even so, it does not appear to be necessary to rely on the bare terminology of section 115 (h) except to

[3] Rept. No. 2156 of the Senate Committee on Finance to accompany the Revenue Bill of 1936, H. R. 12395, p. 19 :

"SECTION 115 (h). EFFECT OF DISTRIBUTIONS ON EARNINGS AND PROFITS.

"The rule, under existing law, with respect to the effect on corporate earnings or profits of a distribution which, under the applicable tax law, is a nontaxable stock dividend or a distribution of stock or securities in connection with a reorganization or other exchange, on which gain is not recognized in full, is that such earnings or profits are not diminished by such distribution. In such cases, earnings or profits remain intact and hence available for distribution as dividends by the corporation making such distribution, or by another corporation to which the earnings or profits are transferred upon such reorganization or other exchange. This rule is stated only in part in section 115 (h) of the Revenue Act of 1934, and corresponding provisions of prior acts, but is the rule which is applied by the Treasury and supported by the courts in *Commissioner* v. *Sansome*, 60 Fed. (2) 931; *U. S.* v. *Kauffman*, 62 Fed. (2) 1045; *Murchison* v. *Comm.*, 76 Fed. (2) 641. · While making no change in the rule as applied under existing law, the recommended amendment is desirable in the interest of greater clarity."

save time and space which discussion of principles requires otherwise. The situation here involves a statutory merger of petitioner into a new corporation having the same name, and a "reorganization" of petitioner resulted within the definition in section 112 (g). The provisions of section 27 (f) certainly can not be applied in total disregard of the status, generally, under the statute of a tax-free reorganization. What is it that happens when corporation A is merged with corporation X, a new corporation, upon a transfer of all its assets, including accumulated earnings and profits, to X in exchange for the stock of X, and when corporation A dissolves and gives the stock of X to its stockholders? It has been said that in such reorganization the stockholders of the transferor corporation A, to whom the stock of X was distributed, retain a continuing interest in the business proceeding in modified corporate form in X. Reorganization presupposes continuance of business under modified corporate forms. *Helvering* v. *Winston Brothers Co.*, 76 Fed. (2d) 381. Here the petitioner admits that there was a reorganization upon which no gain or loss was recognized to it or to its stockholders, and, since no *issue* is raised as to whether or not that admission holds water on all legal counts, we must proceed upon the assumption that the admission means all that it ordinarily must mean. We must assume that there was a continuity of interest of petitioner's stockholders in the new corporation X, and, if that is true, that petitioner's stockholders still retain an interest in petitioner's assets and accumulated earnings and profits which were transferred to the new corporation.

Another question is, what happened to the accumulated earnings of the old corporation? Has there been any distribution of them to petitioner's stockholders? If a merger contemplates that the interests of the stockholders of the old corporation shall be retained in the newly created corporation it is difficult to visualize that there has been any distribution of the accumulated earnings of the old corporation, upon its liquidation, which were transferred to the new corporation, with other assets, in exchange for its stock, particularly since it appears to be an established rule that in such reorganization as we have here the accumulated profits of the old corporation do not become capital of the new corporation, but remain earnings and profits in its hands even though earned by the transferor or old corporation. *Murchison* v. *Commissioner, supra*.

It was pointed out in the *Murchison* case that, "Unless the undistributed gains of the old business are taken over by the new *as undivided profits distributable as dividends*, they escape proper taxation." (Italics supplied.) Giving attention to that factor here,

what light does it cast upon our problem arising under section 27 (f) ? The following appears to be evident: If no gain could be taxed to petitioner's stockholders upon their receipt in liquidation of petitioner of stock of the new corporation in exchange for petitioner's stock, petitioner's stockholders could not be taxed for any dividend or distribution out of accumulated earnings and profits. It would appear to be inconsistent to allow petitioner a dividends paid credit under section 27 (f) as though the stockholders had received a taxable dividend when under the reorganization provisions of the statute they have not received a taxable dividend. And, also, to allow petitioner a dividends paid credit for the distribution of the *stock* of the new corporation upon its liquidation would be tantamount to a holding that petitioner's accumulated earnings and profits had been reduced, and yet for purposes of any distributions by the new corporation the accumulated earnings and profits of petitioner are regarded as held intact by the new corporation and subject to being reduced by distributions by the new corporation under the rule of the *Murchison* case.] It would appear to be a very undesirable result if in construing the provisions of section 27 (f) the situation were created whereby for tax purposes *the same accumulated profits* were made available for two dividends paid credits to two corporate entities.

Such dilemma and contradictions as we have endeavored to indicate by the foregoing are avoided by applying the terms of section 115 (h) in construing the facts of this case under section 27 (f) and, indeed, we believe section 115 (h) can not be ignored. We believe it must be held that the distribution in question which petitioner made in liquidation, being a distribution of stock of a new corporation to which all of petitioner's assets had been transferred, was not such distribution as is "properly chargeable to the earnings or profits accumulated after February 28, 1913."

It is held that the distribution in liquidation of the stock of the new corporation by petitioner was not a distribution chargeable to earnings or profits accumulated after February 28, 1913, and petitioner is not entitled to a credit for dividends paid under section 27 (f). Respondent is sustained.

Other contentions of respondent need not be considered.

There is no merit in petitioner's claim that it is entitled to a dividends paid credit under article 27 (f)-1 (c) of Regulations 94, because there is no evidence to show that any part of the dividends paid by the new corporation during the portion of the taxable year subsequent to the nontaxable exchange of petitioner's assets for the new corporation's stock was apportioned and allocated to petitioner

as a distribution out of its earnings or profits. Cf. *Credit Alliance Corporation*, 42 B. T. A. 1020, 1029.

Reviewed by the Board.

*Decision will be entered for the respondent.*

---

MURDOCK, dissenting: The purpose of Congress, in imposing the surtax upon undistributed profits, as indicated by the legislative history, was to force corporations to distribute their profits or suffer the high rates imposed in section 14. Here the section is being applied in the case of a corporation which dissolved during the taxable year and, in dissolving, distributed everything which it had, including both capital and accumulated profits. This seems like an unwarranted application of the act beyond its purpose.

The prevailing opinion, in order to reach this result, holds that the special provision of section 27 (f) is modified by section 115 (h), a general provision of the act. The Board, in the case of *Credit Alliance Corporation*, 42 B. T. A. 1020, held that section 27 (f) was not modified by section 27 (h), even though the latter related specifically to surtax on undistributed profits and seemed on its face to apply. Here, we go much farther than we were asked and refused to go in the *Credit Alliance* case.

Section 115 (h) appeared for the first time in the Revenue Act of 1934. It was there entitled "DISTRIBUTION OF STOCK ON REORGANIZATION—EFFECT ON FUTURE DISTRIBUTIONS." It provided that a distribution of stock or securities by a corporation, pursuant to a plan of reorganization, where no gain or loss to the distributee was recognized, should not be considered a distribution of earnings or profits within the meaning of section 115 "for the purpose of determining the taxability of subsequent distributions by the corporation." Thus, the whole purpose was to make sure that future distributions by the corporation would be from earnings or profits accumulated after February 28, 1913, in so far as the corporation had any such earnings. Clearly, the section was not intended to apply in the case of the complete liquidation of a corporation where there could be no subsequent distributions by the corporation. Congress could not have had in mind the provisions of the undistributed profits tax because those provisions were not enacted until a later revenue act. The changes made in section 115 (h) of the Revenue Act of 1936 were merely for the purpose of clarification. Furthermore, it seems to me that Congress did not have section 115 (h) in mind when it enacted section 27 (f) of the Revenue Act of 1936, and it did not intend that reference should be made to section 115 (h) (which has no purpose in the case of a complete liquidation), in order to determine what part of the

amount distributed in complete liquidation of a corporation might properly be chargeable to the earnings or profits accumulated after February 28, 1913.

The meaning of the phrase "properly chargeable to the earnings or profits accumulated after February 28, 1913", as used in section 27 (f), was determined in the *Credit Alliance* case. We pointed out that cases like *Commissioner* v. *Sansome*, 60 Fed. (2d) 931; certiorari denied, 287 U. S. 667, had no application. We said that the quoted words merely make a distinction between a charge to capital and a charge to earnings, so that no credit may be allowed for any distribution which should be charged to earnings or profits accumulated prior to March 1, 1913, or as a return of capital, and a dividends paid credit is allowed only for that portion of a distribution which is properly allocable to earnings or profits accumulated after February 28, 1913. "The intent, in our opinion, went no farther." The regulation of the Commissioner and the legislative history of the provision were cited in support of the above conclusions. Obviously, the accounting for a complete liquidation requires that charges be made wiping out both capital and all accumulated profits, and under such circumstances, the amount properly chargeable to the earnings or profits accumulated after February 28, 1913, is the entire amount of those earnings or profits.

DISNEY agrees with this dissent.

---

DISNEY, dissenting: I find myself unable to agree with the majority report in its conclusion that section 115 (h) of the Revenue Act of 1936 requires the holding that the expression "properly chargeable to the earnings or profits accumulated after February 28, 1913" in section 27 (f) of the Revenue Act of 1936 does not apply to the distribution by the petitioner of stock in another corporation which in a nontaxable reorganization it secured in exchange for its earned surplus. In my opinion, the language of section 115 (h) of the Revenue Act of 1936 should not be given a meaning and application essentially different from section 115 (h) of the Revenue Act of 1934. As stated in a footnote to the majority opinion, the report of the Senate Committee on Finance, as to section 115 (h) of the 1936 Act, points out that "The rule, under existing law" (as to effect on corporate earnings or profits of a nontaxable stock dividend or a nontaxable distribution of stock in a reorganization), is that "such earnings or profits are not diminished by such distribution" and that they remain intact, available for distribution as dividends by the distributing corporation, or another which receives them in reorganization. After stating that this rule is stated only in part in section 115 (h) of the

Revenue Act of 1934, the report says that the rule is applied in the *Sansome* case and others. The report concludes: "While making no change in the rule as applied under existing law, the recommended amendment is desirable in the interest of greater clarity." This seems to indicate the view that no substantive change was made in section 115 (h) of the 1934 Act, but that it was only clarified. That section in the 1934 Act, however, was in part entitled "Effect on Future Distributions", and provided that the distribution there involved "shall not be considered a distribution of earnings or profits within the *meaning of this section* for the purpose of *determining the taxability of subsequent distributions by the corporation.*" (Italics supplied.) If section 115 (h) in the 1936 Act makes no essential change and merely clarifies the above language in the 1934 Act, obviously effect upon section 27 (f) and the new undistributed profits tax provisions was not within Congressional intent. It seems to me that the intent, as in 1934, was merely to provide that a nontaxable distribution of stock should not diminish earnings and profits "for the purpose of determining the taxability of subsequent distributions by the corporation", that section 115 (h) does not determine what is "properly chargeable to the earnings or profits" under section 27 (f), and that, as stated in Regulations 94, article 27 (f)–1 (b), "To determine the amount properly chargeable to the earnings or profits accumulated since February 28, 1913, there must be deducted from the amount of the distribution that part allocable to capital account"; in other words, that if the distribution represented earnings or profits and not capital, and was a part of the liquidation distribution particularly covered in section 27 (f), the dividends paid credit should result. In this matter the petitioner originally had earned surplus of approximately $54,000. This was exchanged for stock of another corporation, and was then distributed to stockholders in liquidation.

I think the fact that the exchange was in a reorganization furnishes no alchemy to change the $54,000 earned surplus into capital, that the stock, the substitute for the $54,000, remained earned surplus the same as it would have been if the $54,000 earned surplus had been invested in stock of any other corporation, and that when such stock was distributed in liquidation, it was "properly chargeable to the earnings or profits." I can not discern that it became capital of the distributing corporation, and think that the ordinary bookkeeping transaction would have charged it to "earnings or profits."

Further, in my opinion, the line of cases beginning with *Commissioner* v. *Sansome*, 60 Fed. (2d) 931; certiorari denied, 287 U. S. 667, is not decisive that in this matter there was no distribution of earnings or profits to a distributee in liquidation, as covered by section 27 (f). The true test which should be followed in applying such

cases is, in my opinion, not whether there was merely a tax-free reorganization, but whether there was substantial identity of the two corporations. Paul and Mertens, vol. 1, ¶ 8.45. Here the facts show that there was no substantial identity of the two corporations. I therefore think that *Commissioner* v. *Sansome*, and the cases following it, interpreting other statutes than those here involved, should not be given effect under the facts here found in the interpretation of the undistributed profits tax provisions of the Revenue Act of 1936, as they are, in the reliance placed by the majority opinion upon the committee report which cites them. As I view the matter, the committee report itself indicates that section 115 (h) of the 1936 Act should be given effect only in the matter of future distribution of earnings or profits following a stock dividend, or distribution of stock or securities in a nontaxable reorganization to dictate that there has been thereby no diminution of earnings or profits; but that it does not follow that a definition is furnished for "properly chargeable to the earnings or profits" in section 27 (f), a more particular section involving liquidations, and the new matter of undistributed profits tax under section 14, Revenue Act of 1936. I must therefore respectfully dissent.